## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Christine M. Schwagerl; and Roark E. Schwagerl, a/k/a Edward Roark Schwagerl; | Civ. No. 11-3578 (DWF/JJK) |
| Plaintiffs, | |
| v. | **REPORT AND RECOMMENDATION** |
| Federal National Mortgage Association, Saxon Mortgage Services, Inc., and Mortgage Source, Inc., | |
| Defendants. | |

Christine M. Schwagerl and Roark E. Schwagerl, 49 14th Avenue South West, New Brighton, MN 55112, *pro se* Plaintiffs.

Jennifer L. Young, Esq., and Michael J. Steinlage, Esq., Larson King, LLP, counsel for Defendants Federal National Mortgage Association and Saxon Mortgage Services, Inc.

JEFFREY J. KEYES, United States Magistrate Judge

### INTRODUCTION

This matter is before the undersigned Magistrate Judge for a Report and Recommendation to the District Court on Defendant's Motion to Dismiss, Plaintiffs' Motion to Strike, and Plaintiffs' Motion for Remand.  *See* 28 U.S.C. § 636(b)(1) and Local Rule 72.1.  In the Complaint, Plaintiffs seek judgment setting aside the foreclosure of their home, nullifying their debt, and declaring that they hold title to their home free and clear.  Plaintiffs allege they are entitled

to such relief because of the following defects in Defendants' interests: (1) the

original promissory note signed with Mortgage Source, Inc. ("Mortgage Source")

is void because Mortgage Source was not properly licensed to issue such a loan

under Minn. Stat. § 56.01; (2) the nominal mortgagee, Mortgage Electronic

Registration Systems, Inc. ("MERS"), did not have sufficient interest in the

underlying note to assign the servicing of the mortgage to Saxon Mortgage

Services, Inc. ("Saxon"), and therefore Saxon had no right to foreclose; and

(3) Saxon and its successors in interest are estopped from claiming any interest

in Plaintiffs' note or property after failing to respond to a proceeding involving

notaries that resulted in a "Notice of Denial of Beneficial Interest and Notice of

Fault."  (Doc. No. 1.)

Defendants have moved to dismiss all claims (Doc. No. 3), to which

Plaintiffs filed their own motion, termed a Motion to Strike (Doc. No. 10),

objecting on the basis that Defendants did not file any supporting papers with the

Motion to Dismiss.  While this court generally prefers all documents to be filed

together, Local Rule 7.1(b) permits supporting documents to follow filing of a

dispositive motion provided that such documents are filed and served 42 days

prior to hearing.  D. Minn. Loc. R. 7.1.  Defendants filed their Memorandum in

Support of Their Motion to Dismiss on February 10, 2012 (Doc. No. 21), with

affidavits of service completed by February 13 (Doc. Nos. 22–24), exactly 42

days prior to the March 26 hearing.  Therefore, this Court recommends that Plaintiffs' Motion to Strike be denied.[1]

On March 6, 2012, Plaintiffs filed a document titled "Mandatory Notice of Challenge of Subject Matter Jurisdiction and Ministerial Duty to Remand" (Doc. No. 28), which this Court construes as a motion to remand.  In this motion, Plaintiffs argue that the Court does not have subject-matter jurisdiction due to a lack of proof of diversity of citizenship on the part of Defendants.  For the reasons stated below, this Court recommends that Plaintiffs' Motion to Remand be denied, and Defendants' Motion to Dismiss be granted with prejudice.

## FACTUAL BACKGROUND

The facts as alleged by Plaintiffs are as follows.  On January 6, 2005, Plaintiffs received a loan in the amount of $192,000 from Defendant Mortgage Source, documented in a note and secured by a mortgage naming MERS as nominal mortgagee.  (Doc. No. 1, Compl. ¶ 15, Exs. B, C.)  Mortgage Source immediately transferred the note and servicing rights on the mortgage to Ohio Savings Bank.  (*Id.* ¶ 16, Ex. D.)  In 2007, Ohio Savings Bank became AmTrust Bank and on December 4, 2009, AmTrust Bank closed.  (*Id.* ¶ 24.)  The Office of Thrift Supervision oversaw the closing of AmTrust Bank through February 2010, and the mortgage servicing rights on Plaintiffs' mortgage were then assigned to Saxon from FDIC, the receiver for the Office of Thrift Supervision, and Plaintiffs

---

[1]     Plaintiffs' motion also articulated a theory under Fed. R. Civ. P. 12(b)(7) relating to a supposed failure to join a necessary party, but that rule does not enable a plaintiff to counter a motion to dismiss.

were notified of the transfer.  (*Id.* ¶ 25, Ex. F.)  The note itself was not transferred to Saxon until September 22, 2010, when John Cottrell, an assistant vice president of MERS as well as an employee of Saxon, assigned the note and the mortgage in full to Saxon on behalf of MERS.  (*Id.* ¶ 31.)

After receiving the notice of transfer of servicing rights in February, Plaintiffs attempted to challenge Saxon's interest in their home and right to receive payments on their loan.  They did this by directing notaries to send notices to Saxon denying their interest and stating that Saxon had short time periods in which to respond and prove their claim.  (*Id.* ¶ 26, Ex. G.)  When Saxon did not respond, Plaintiffs sent a "Certificate of Non-Response," "Notice of Fault in Dishonor," "Confession to Judgment," and "Notice of Denial of Beneficial Interest," the result of which, Plaintiff claims, is that Saxon has disclaimed all interest in Plaintiffs' note, mortgage, or property, and is estopped from claiming any such interest in the future.  (*Id.*)  On June 30, 2010, Plaintiffs also "registered Notice" with the Secretary of State and Ramsey County Recorder of declarations that they were the full title-holders to their property.  (*Id.* ¶¶ 27–28, Exs. H, I.)

On August 20, 2010, Plaintiffs received a Notice of Intent to Initiate Foreclosure Proceedings from Shapiro & Ziekle, LLC, a firm hired by Saxon.[2] (*Id.* ¶ 30.)  On September 22, 2010, MERS assigned the mortgage to Saxon, giving Saxon full rights over the note and mortgage in their entirety.  (*Id.* ¶ 31.)

---

[2]   It is undisputed that prior to the foreclosure notice Saxon sent a notice of intent to accelerate and in all ways complied with the proper procedure for foreclosure by advertisement.

Thereafter, the foreclosure commenced, and in March 2011, Saxon purchased the property at Sheriff's Sale.  (*Id.* ¶¶ 32–34, Exs. M, N, O.)  On June 1, 2011, Saxon transferred its ownership interest in the property to Federal National Mortgage Association ("FNMA").  (*Id.* ¶¶ 35–36, Exs. O & P.)  The foreclosure redemption period expired on November 7, 2011, and FNMA commenced an eviction action the following day.  One week later, Plaintiffs brought this action in Ramsey County to stay the eviction.  On December 9, 2011, Defendants removed the action to Federal Court.  (Doc. No. 1.)

## DISCUSSION

### I.    Plaintiff's Motion for Remand

A defendant may remove "only state-court actions that originally could have been filed in federal court."  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).  A defendant seeking to remove must include a short and plain statement of the grounds for removal, and include a copy of all process, pleadings, and orders served on the defendant in the notice of removal.  28 U.S.C. § 1446(a). The defendant must file the notice of removal within thirty days after the receipt of the initial pleading, "through service or otherwise."  *Id.* § 1446(b).

A court may remand for lack of subject-matter jurisdiction "on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Johnson v. United States*, 534 F.3d 958, 962 (8th Cir. 2008) (internal quotations omitted).

"The burden of establishing that a cause of action lies within the limited jurisdiction of the federal courts is on the party asserting jurisdiction." *Ark. Blue Cross & Blue Shield v. Little Rock Cardiology Clinic, P.A.*, 551 F.3d 812, 816 (8th Cir. 2009).

### a.   Diversity with Respect to the Defendants Saxon and FNMA

It is undisputed that Defendants' removal comported with the requirements of form, service, and timeliness.  And Plaintiffs' substantive challenges based on a lack of diversity of citizenship fail in large part due to the record they themselves created.  In their Complaint, Plaintiffs make no direct claim of any party's citizenship, but they do assert that they are domiciled in Minnesota and that both Saxon and FNMA have Texas addresses.  (Doc. No. 1, Compl. ¶¶ 3–4.) And on Plaintiffs' attached civil cover sheet, Plaintiffs are indicated to be citizens of Minnesota, and Defendants are indicated to be citizens of another state because they are incorporated in and have a principal place of business in another state.  (Doc. No. 1, Attach. 4.)  Further, Plaintiffs have at no time suggested that Saxon or FNMA are citizens of Minnesota; they merely state that the burden is on Defendants.  While this is as a general matter true, a concession from the opposing party—that is, Plaintiffs—asserting the same fact that Defendants claim, is typically sufficient.  However, "in an abundance of caution," Defendant has also supplied the Court with an affidavit that has not been refuted attesting to the citizenship of Saxon (Doc. No. 33, Aff. of LeAllen Frost ¶¶ 3–6), and pointed the Court to 12 U.S.C. § 1717(a)(1), which establishes

FNMA's citizenship in the District of Columbia.  (Doc. No. 32, FNMA's and Saxon's Mem. in Opp'n 5 n.2; *Id.* at 6.)  This is more than sufficient to prove diversity of citizenship between Plaintiffs and Defendants Saxon and FNMA.

### b.  Diversity with Respect to Defendant Mortgage Source

Plaintiffs' Complaint also names Mortgage Source, a Minnesota Corporation, as a Defendant.  But Plaintiffs' only claim against Mortgage Source—that they were not properly licensed under Minn. Stat. § 56.01—is not supported in fact or law.  Section 56.01 is concerned with the interest charged by nonlicensed parties on loans under $100,000.  As such, section 56.01 does not apply to this situation for three reasons: (1) the loan in question was for more than $100,000; (2) the interest on the loan was adjustable up to 10.75%, well below the statutory limit of 21.75%; and (3) Mortgage Source was properly licensed as a "residential mortgage originator" at the time the mortgage was made.  (Doc. No. 1, Compl. at Exs. C, E).  The Court is not aware of any other similar or related provision of Minnesota law that suggests that the mortgage Plaintiffs made with Mortgage Source was anything but legal and fully enforceable.  Further, both the Complaint and documents encompassed by the Complaint demonstrate that Mortgage Source no longer holds any interest in the subject mortgage loan, therefore any relief sought by Plaintiffs would have no effect on Mortgage Source.

Defendants argue that Mortgage Source's presence in the lawsuit cannot defeat diversity under the doctrine of fraudulent joinder.  To establish fraudulent

joinder, a defendant must go beyond demonstrating that the claims against the nondiverse defendant should be dismissed under Rule 12(b)(6). *Block v. Toyota Motor Corp.*, 665 F.3d 944, 948 (8th Cir. 2011). Instead, joinder of a party "is fraudulent when there exists no reasonable basis in fact and law supporting a claim against the resident defendant[]." *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 871 (8th Cir. 2002) (quoting *Anderson v. Home Ins. Corp.*, 724 F.2d 82, 84 (8th Cir. 1983)). There is no need to show that Plaintiffs purposefully joined Mortgage Source simply to destroy diversity because "[t]he motives of the plaintiff in making his claim of [Defendant's] liability are not important." *Morris v. E.I. Du Pont De Nemours & Co.*, 68 F.2d 788, 793 (8th Cir. 1934); *Asplund v. iPCS Wireless, Inc.*, 602 F. Supp. 2d 1005, 1008 (N.D. Iowa 2008). The joinder of a nondiverse defendant is not fraudulent where "'there is arguably a reasonable basis for predicting that the state law might impose liability based upon the facts involved.'" *Block*, 665 F.3d at 948 (quoting *Junk v. Terminix Int'l Co.*, 628 F.3d 439, 446 (8th Cir. 2010)). In appropriate cases, courts may take a limited look at evidence outside the pleadings in making this inquiry. *See Block*, 665 F.3d at 948 ("In fraudulent joinder cases, some courts examine material beyond the complaint's allegations to 'determine if there is any factual support' for the claims against the allegedly fraudulently joined defendant." (quoting *Masepohl v. Am. Tobacco Co.*, 974 F. Supp. 1245, 1250 (D. Minn. 1997)).

As explained above, the claim asserted against Mortgage Source is without sufficient basis in law or fact. Therefore, this Court concludes that

Mortgage Source was fraudulently joined as a party, Mortgage Source does not destroy diversity of citizenship in this action, and the removal was proper. *See Simpson v. Thomure*, 484 F.3d 1081, 1083 (8th Cir. 2007) (stating that the right of an out-of-state defendant to remove a diversity suit to federal court cannot be defeated by the fraudulent joinder of a resident defendant).

### c.   Alternative Bases for Remand

Plaintiffs set out a number of additional arguments as to why removal was inappropriate in this case. Each will be responded to briefly, but by and large these arguments are misstatements of law and are not viable arguments in support of the motion to remand. First, Plaintiffs assert that there were no properly attested facts filed in support of the removal because allegations must be notarized to be binding. But this is not the law. Second, Plaintiffs assert that Defendants or their counsel lack standing before the Court. Defendants do not have to show standing because by being sued they have a legal interest to defend and a right to be heard in court through the use of counsel. Third, Plaintiffs assert that Defendants must provide their articles or association to prove citizenship under 28 U.S.C. § 1348. This statute does not apply to Saxon, which is not a national banking organization, and the statute governing FNMA's citizenship is 12 U.S.C. § 1717: "[FNMA] shall maintain its principal office in the District of Columbia and shall be deemed, for purposes of venue in civil actions, to be a resident thereof." Fourth, Plaintiffs state that this suit is a probate matter. Plaintiffs argue that the capitalized versions of their names are separate legal

entities from themselves, that they are the rights-holders of these separate estates, and that it is the estates that were parties to the mortgage agreement in question.  The Court will not fully take up the merits of this theory here, but will instead reference the thorough and satisfactory discussion in *Bryant v. Washington Mutual Bank*, 524 F. Supp. 2d 753 (W.D. Va. 2007), which found no basis for this theory and considered the individuals involved to be responsible for their debts in the usual manner.  This Court also concludes that the individuals Christine and Roark Schwagerl were parties to the mortgage on their property, and no estates are involved that would make this a probate case.  Finally, Plaintiffs assert that the amount in controversy has not been established as exceeding $75,000.  As the relief sought clearly specifies voiding a note for $192,000 and a mortgage and foreclosure sale for an attached property, there is an ample showing that more than $75,000 is in controversy in this case. Accordingly, removal was proper in this case, and this Court recommends that the Plaintiffs' Motion to Remand be denied.

## II.    Defendants' Motion to Dismiss

In deciding a motion to dismiss, a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant.  *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).  In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged.

*Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).  To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007).  Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level."  *Id.* at 1964–65.  This standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]."  *Id.* at 1965.  Thus, the question before this Court is whether the claimed defects in Defendants' interests are sufficiently plead to state a plausible claim for relief.

As discussed above, there is no basis in law and fact for Plaintiffs' allegations that the original loan and mortgage are void.  As such, only Plaintiffs' other allegations concerning MERS's right to assign the mortgage and Saxon being estopped from claiming an interest in the Plaintiffs' property will be more fully discussed.

### a.    MERS Conveyance to Saxon

Plaintiffs allege that MERS, as mere nominee for the lender, did not have any legal interest in the underlying promissory note, and therefore could not have lawfully conveyed the servicing rights on Plaintiffs' mortgage to Defendant Saxon.  (Doc. No. 1, Compl. ¶ 11b.)  And in paragraphs 36–43 of their Complaint, Plaintiffs state the purely legal argument that without a beneficial interest in the note, a party may not convey rights in the "inseparable" mortgage,

concluding that "the security instrument . . . follows the debt." (*Id.* at ¶ 42.)  For this proposition Plaintiffs quote law from decisions in Arizona, California, Nebraska, and Illinois.  (*Id.*)  However, this is not the law in Minnesota.

In *Jackson v. MERS*, 770 N.W.2d 487 (Minn. 2009), the court recognized the MERS system whereby MERS, as "the nominal mortgagee for the lender and any successors and assigns[,]" serves as "the mortgagee of record for all loans in its system."  *Id.* at 490.  It explained that MERS "essentially separate[s] the promissory note and the security instrument, allowing the debt to be transferred without an assignment of the security instrument."  *Id.* at 494.  And it acknowledged that "[b]y passing the MERS statute, the legislature appears to have given approval to MERS' operating system for purposes of recording."  *Id.* The plaintiffs in *Jackson*, like the Plaintiffs here, argued that "because MERS is a nominee or agent for the member, MERS does not actually hold legal title."  *Id.* at 498.  But the court explained that:

> MERS is the mortgagee of record on plaintiffs' loans, and for the reasons stated in *Morrison*, we have held that a mortgagee of record does not lose legal title when the mortgagee transfers interests in the promissory note.  In cases where the mortgagee of record has made several partial assignments to third parties but retained some personal interest in the promissory note and security instrument, we have allowed the mortgagee of record to foreclose by advertisement.

*Id.*

Also, the plaintiffs in Jackson, like the Plaintiffs here, argued that "a mortgagee cannot hold legal title to a mortgage unless that mortgagee also has at least some interest in the underlying indebtedness," and that because of this

"MERS cannot hold legal title." *Id.*  The Minnesota Supreme Court expressly rejected this argument, stating:  "Our case law establishes that a party can hold legal title to the security instrument without holding an interest in the promissory note." *Id.* at 500.[3]  The court further explained that only the legal title to the mortgage must be recorded for the holder of that legal title to be able to foreclose by advertisement.  *Id.* at 501.  Accordingly, MERS was fully permitted under Minnesota law to remain nominal mortgagee of Plaintiffs' mortgage while the servicing rights were transferred from Mortgage Source to Ohio Savings Bank, and eventually to Saxon.  Then, when MERS transferred its legal title in the mortgage to Saxon as well, it reunited the interests in the mortgage and gave Saxon the right to foreclose.

> **b.     Saxon's Ongoing Ability to Claim an Interest in the Property**

Plaintiffs also contend that even if Saxon acquired a legal interest in their property, they disclaimed it and are now estopped from arguing otherwise in any forum.  Plaintiffs' contention is based on the series of notarized letters they sent to Saxon demanding proof of Saxon's interest in their property.  In these letters, Plaintiffs seem to be attempting to create a trust surrounding the mortgage with

---

[3]     The certified question answered in Jackson was whether Minnesota's foreclosure-by-advertisement statute requires that the transfer of a note be recorded when the mortgage securing the note has not also been transferred.  *Id.* at 493.  The Minnesota Supreme Court held that the answer to that question is "no," *id.* at 489–90, and along the way also made other determinations that directly relate the present dispute.  *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 67 (1996) ("When an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound.").

Mr. Schwagerl as grantor.  But the Minnesota Supreme Court has made it clear that a trust cannot be created when one party "has not manifested any intent to create a trust."  *Bond v. Comm'r of Revenue*, 691 N.W.2d 831 (Minn. 2005).  Plaintiffs do not assert that Saxon or any other party ever intended to create a trust surrounding the mortgage in question.  Therefore, no trust exists and Plaintiffs could not unilaterally create one.[4]

In addition, the letters that Plaintiffs sent to Saxon purport to obligate Saxon to prove their interest in the mortgage within a short period of time or waive all interests and be "permanently estopped from any claim to the contrary." (Doc. No. 32, Ex. 3.)  A party seeking to invoke the doctrine of equitable estoppel, however, has the burden of proving three elements: "(1) that promises or inducements were made; (2) that it reasonably relied upon the promises; and (3) that it will be harmed if estoppel is not applied."  *Hydra-Mac, Inc. v. Onan Corp.*, 450 N.W.2d 913, 919 (Minn. 1990).  Further, the promisee's reliance must be reasonable.  *Faimon v. Winona State Univ.*, 540 N.W.2d 879, 882 (Minn. Ct. App. 1995).  Here, Plaintiffs have made no allegation that Saxon promised to

---

[4]    On March 23, 2012, Plaintiffs submitted to the Court a notice in which they claim an ownership interest in this case.  (Doc. No. 35.)  The notice combines this case with the disputed property—what was at least formerly the Schwagerl's home and land—into a single trust, naming Clerk of Court Richard Sletten as trustee, claiming equitable title of all trust assets, and informing the Court that it has ten days to prove a superior interest or waive its claim.  As above, one cannot create a trust in such a manner.  Additionally, a case before a United States Federal Court is not property, and cannot be a trust asset.  Certainly, Plaintiffs have no equitable or other title over this case, and it should be made clear that the kind of documents Plaintiffs are using to claim such interests do not have the force of law.

eschew their claim to the mortgage or interest in the property under any circumstances.  Therefore, the doctrine of equitable estoppel is not applicable and Plaintiff's theory fails as a matter of law.

### c.    Plaintiffs Lack Standing

As an alternative basis for granting Defendants' Motion to Dismiss, this Court also recognizes that Plaintiffs suit is an impermissible collateral attack on the foreclosure proceeding, as they did not redeem their property before the redemption period expired.  As Defendants point out, a "sheriff's certificate of sale . . . shall be prima facie evidence that all requirements of law . . . have been complied with."  Minn. Stat. § 580.19.  Plaintiffs do not dispute that a Sheriff's certificate of sale was created on March 11, 2011, that the redemption period on the sale ended on November 7, 2011, or that the period passed without legal challenge.  A "claimed irregularity, asserted only after the expiration of the period of redemption, constitute[s] an impermissible collateral attack."  *Prior Lake State Bank v. Mahoney*, 216 N.W.2d 681, 682 (1974).  Plaintiffs' current suit is an impermissible collateral attack on the valid foreclosure sale of their property, and their claims are accordingly barred.

Because there is no basis in law for any of Plaintiffs' claims, even when taking all facts in the Complaint as true, Plaintiffs have failed to state a claim upon which relief can be granted.  In addition, Plaintiffs lack standing to bring their claims in this action initiated after the close of the foreclosure redemption period.  Accordingly, Defendants' Motion to Dismiss should be granted.

## RECOMMENDATION

Based on the files, records and proceedings herein, **IT IS HEREBY**

**RECOMMENDED** that:

1.      Plaintiffs' Motion to Strike (Doc. No. 10), be **DENIED**;

2.      Plaintiffs' Mandatory Notice of Challenge of Subject Matter

Jurisdiction and Ministerial Duty to Remand (Doc. No. 28), construed as a motion

to remand, be **DENIED**;

3.      Defendants' Motion to Dismiss (Doc. No. 3), be **GRANTED**; and

4.      This case be **DISMISSED WITH PREJUDICE**.


Date:  April 11, 2012

                                                     *s/ Jeffrey J. Keyes*
                                                     JEFFREY J. KEYES
                                                     United States Magistrate Judge


        Under D.Minn. LR 72.2(b) any party may object to this Report and
Recommendation by filing with the Clerk of Court, and serving all parties by
**April 25, 2012**, a writing which specifically identifies those portions of this Report
to which objections are made and the basis of those objections.  Failure to
comply with this procedure may operate as a forfeiture of the objecting party's
right to seek review in the Court of Appeals.  A party may respond to the
objecting party's brief within **fourteen days** after service thereof.  All briefs filed
under this rule shall be limited to 3500 words.  A judge shall make a de novo
determination of those portions of the Report to which objection is made.  This
Report and Recommendation does not constitute an order or judgment of the
District Court, and it is therefore not appealable directly to the Circuit Court of
Appeals.

        Unless the parties stipulate that the District Court is not required by 28
U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections
made to this Report and Recommendation, the party making the objections shall
timely order and file a complete transcript of the hearing within **ten days** of
receipt of the Report.